UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

**FILED**
DEC 11 2013
CLERK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | CR. 13-40087 |
| Plaintiff, | * | |
| vs. | * | REPORT and RECOMMENDATION |
| GEOFFREY BANKS, | * | |
| Defendant. | * | |

Pending is Defendant's Motion to Suppress Evidence (Doc. 22). A hearing was held on Wednesday, December 4, 2013. Defendant was personally present and represented by his attorney of record, Assistant Federal Public Defender Jason Tupman. The Government was represented by Assistant United States Attorney Jennifer Mammenga. One witness testified at the hearing. Two exhibits were received into evidence. Both parties have submitted briefs and oral argument was heard at the conclusion of the hearing. Based on a careful consideration of all the evidence, and counsel's written and oral arguments, the Court respectfully makes the following:

## RECOMMENDATION

It is respectfully recommended that Defendant's Motion to Suppress be DENIED.

## JURISDICTION

Defendant is charged in an Indictment with being a Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1). The pending Motion was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Judge Schreier's Standing Order dated March 18, 2010.

## FACTUAL BACKGROUND

### Miner County Deputy Sheriff Mike Clary

Deputy Sheriff Clary (Clary) was alone on patrol duty just before 1:00 a.m. on December 11, 2012. On that date, the weather was cold, snowy and slippery. Deputy Clary observed Mr. Banks

(Banks) run a stop sign and "spin out" in an intersection in Howard, South Dakota. Clary knew Banks and knew he was a member of the community, that Banks worked in Howard, and that he'd not had any previous law enforcement-related encounters with Banks. Howard, South Dakota is not a high crime area.

Banks' vehicle came to rest directly in front of Clary's patrol car. The snow had not been cleaned off Banks' vehicle or windshield. Clary activated his emergency lights, approached and asked Banks to exit the vehicle. As Clary approached Banks' vehicle, Clary noticed Banks had his hands in the air. Clary thought this was extremely peculiar behavior. Clary had been a Deputy Sheriff for seven years and had never had anyone put their hands in the air after being stopped for a traffic stop. When Clary got close enough, the smell of alcohol was emanating from Banks' vehicle and Clary could see there was a young (approximately three or four years old) boy in the back seat.[1]

Clary asked Banks to exit the vehicle. Banks complied. Banks was wearing a down winter coat and what appeared to be lounge or pajama pants. Clary asked Banks if Banks possessed anything that could "poke, stab or hurt" Clary in any way. Banks said "no." Clary conducted a pat down search and found an object that turned out to be a gun in the front right pocket of Banks' winter down coat. Clary explained he decided to conduct the pat down because he thought Banks behavior of placing his hand in the air after being stopped for a traffic stop was "weird" and because he was going to be placing Banks in the patrol car with him.

Clary did not notice anything protruding from Banks' coat before the pat down. Clary asked Banks what the object was and Banks said he did not know. After Clary located the gun, he asked Banks if Banks did not understand the earlier question. Banks said the gun could not have hurt Clary because it was not loaded. Clary asked Banks, along with his young son, to come sit in the patrol

---

[1] The child was later identified as Banks' son.

2

car. After a while, Clary transported the child home. Clary then administered field sobriety tests, which Banks passed. Clary asked Banks to get into the back of the patrol car while Clary searched Banks' truck for insurance documents. Banks was compliant with all of Clary's requests during the entire encounter. Clary eventually arrested Banks for a possession of a concealed weapon, a stop sign violation, and for side-swiping a parked vehicle.[2]

## DISCUSSION

### Burden of Proof

As a general rule, the burden of proof is on the defendant who seeks to suppress evidence, *United States v. Phillips*, 540 F.2d 319 (8th Cir.1976), but on the government to justify a warrantless search or seizure. *United States v. Bruton*, 647 F.2d 818 (8th Cir.1981). The standard of proof is a preponderance of the evidence. *Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972).

### Whether Clary Had Reasonable Suspicion to Conduct a Pat Down Search

The Fourth Amendment to the United States Constitution provides "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Generally, therefore, police must secure a warrant before conducting a search. *Maryland v. Dyson*, 527 U.S. 465, 466, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999).

"A law enforcement officer is nevertheless justified in making a limited, warrantless search for the protection of himself or others nearby in order to discover weapons if he has a reasonable, articulable suspicion that the person may be armed and presently dangerous." *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.889 (1967). Officer safety is the justification for a pat-down

---

[2]During the course of the stop, it became apparent that Banks had earlier side-swiped a parked vehicle. Clary was unaware of the side-swipe when he conducted the pat-down.

3

search or a protective frisk. *United States v. Gray*, 213 F.3d 998, 1000 (8th Cir. 2000). "A protective frisk is constitutionally reasonable when a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous." *Id.* (*citing Terry*, 392 U.S. at 30). When determining whether an officer had reasonable suspicion of criminal activity, the circumstances must be viewed in their totality "as understood by those versed in the field of law enforcement." *Id.* (citation omitted). Under this objective standard, "the officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or the safety of others was in danger." *United States v. Roggeman*, 279 F.3d 573, 578 (8th Cir. 2002). However, "Fourth Amendment reasonableness does not require that the policemen must feel 'scared' by the threat of danger." *United States v. Menard*, 95 F.3d 9, 11 (8th Cir. 1996) (citation omitted).[3]

In this instance, I conclude Clary was justified in conducting the pat-down search. Howard, South Dakota is not a high crime area and Clary was not aware that Banks had a history of violence or drug-related activity. The traffic violation occurred, however in the middle of the night and Clary was alone on patrol. The circumstances were strange: Banks was driving carelessly in bad weather conditions, not having bothered to clean the snow off his windshield. He was wearing what appeared to be his pajamas and had a small child with him in the car. Clary learned only later that the child was Banks' son; at the time of the pat-down, Clary did not know the child's identity. Further, when Clary approached the vehicle after activating his patrol car lights, Banks had his hands in the air as if he had been told he was under arrest even though Clary had not verbalized any such instruction to Banks. Clary explained in his seven years of law enforcement experience, nobody has ever put their hands in the air after being stopped for a mere traffic violation. *See United States v. Greene*,

---

[3] In *Menard* the Eighth Circuit noted the "inherent danger traffic stops pose to police officers and the consequent likelihood that minimally invasive weapons searches will be reasonable." *Id.* at 11. The inherent danger is increased when the traffic stop occurs late at night. *Roggeman*, 279 F.3d at 578.

4

129 F.3d 1252 (1st Cir. 1997) (unpublished).[4] In *Greene* the defendant was a passenger in a vehicle stopped for a traffic violation. When the officer approached the car, the defendant (un-prompted) blurted out "what did I do?" He made no furtive movements and was previously unknown to the officers. The officers noticed a bulge in the passenger's pants pocket and decided to do a pat-down search. The First Circuit upheld the pat-down in part because of the passenger's behavior. "[The passenger's] nervousness and question could reasonably be construed by a seasoned police officer as evincing consciousness of guilt." *Greene*, 129 F.3d at *2. While Banks asserts that putting his hands in the air was a sign of compliance, it made Clary suspicious. Throwing one's hands in the air after merely being stopped for a traffic violation and in the absence of being asked to do so, "could reasonably be construed by a seasoned police officer as evincing consciousness of guilt." *Id.*

Throwing one's hands in the air assuming one is under arrest as the officer approached the vehicle after a traffic stop (described by Clary as "weird"), standing alone, may not have been enough to justify a pat-down search. It is error, however, to consider the relevant facts in isolation. *United States v. Preston*, 685 F.3d 685, 689 (8th Cir. 2012). "In determining whether reasonable suspicion existed, we examine the facts collectively rather than asking if each fact individually establishes reasonable suspicion." Banks' "weird" behavior, combined with: (1)the lateness of the hour; (2) that Banks was driving carelessly in the middle of the night with an un-identified child in the vehicle; (3) while Banks was apparently dressed in night clothes; (4) Clary's inability to clearly see whether Banks might be armed because of his bulky coat; (5) that Clary was alone on patrol; and (6) the inherent danger presented by traffic stops, leads to the conclusion that "a reasonably prudent person in the circumstances would be warranted in the belief that his safety or the safety of others was in danger." *Terry v. Ohio*, 392 U.S. 1, 27, (1968).

---

[4]Pursuant to First Circuit Local Rule 32.1.0, Unpublished Opinions of the First Circuit may be cited regardless of the date of issuance. They may be considered for their persuasive value but not as binding precedent. The *Greene* case is cited here because of its persuasive value, the similarity of its facts to the case at hand and no published opinion would serve as well.

## CONCLUSION

For the reasons more fully explained above, it is respectfully RECOMMENDED to the District Court that Defendant's Motion to Suppress (Doc. 22) be DENIED.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court.

*Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990)
*Nash v. Black*, 781 F.2d 665 (8th Cir. 1986)

Dated this __11__ day of December, 2013

BY THE COURT:

_____
John E. Simko
United States Magistrate Judge

6