UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. 13-40087-01-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER GRANTING MOTION |
| | ) | TO SUPPRESS |
| GEOFFREY BANKS, | ) | |
| | ) | |
| Defendant. | ) | |

**NATURE AND PROCEDURE OF THE CASE**

Defendant, Geoffrey Banks, is charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Banks moves to suppress all evidence obtained as a result of a warrantless pat-down search that occurred on December 11, 2012, following a traffic stop. The motion was referred to a United States magistrate judge for a report and recommendation.

On December 4, 2013, an evidentiary hearing was held before the magistrate judge. Miner County Deputy Sheriff Mike Clary was the only witness who testified during the hearing. Two exhibits were received into evidence. Based upon the testimony and exhibits received at the hearing, the magistrate judge issued a report and recommendation recommending denial of the motion to suppress because prior to performing the pat-down search, Deputy Clary had a reasonable belief that his safety or the safety of others was in danger. Banks objects to the report and recommendation. For the following reasons,

the court rejects the report and recommendation of the magistrate judge and grants Banks's motion to suppress.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636(b)(1)(C), the court should make a de novo review "of those portions of the [magistrate judge's] report or specified proposed findings or recommendations to which objection is made." *See also Thomas v. Arn*, 474 U.S. 140 (1985). The court has conducted a de novo review.

## FACTS

The pertinent facts are as follows:

Deputy Clary was alone on patrol duty around 1 a.m. on December 11, 2012, in Howard, South Dakota. The weather was cold and snowy, causing the roads to be slippery. As Deputy Clary approached an intersection, he witnessed a vehicle slide through a stop sign, attempt to make a turn, and spin out, coming to rest directly in front of Deputy Clary's patrol car. Deputy Clary immediately activated his emergency lights and shortly thereafter approached the vehicle. As he approached the vehicle, Deputy Clary noticed the driver had his hands in the air, which Deputy Clary described as "weird." Docket 34 at 5, 24.

Upon making contact with the driver, Deputy Clary learned the identification of the driver was Geoffrey Banks. He also noticed there was a young child in the vehicle, who was later identified as Banks's three-year old son. Deputy Clary had met Banks about five months earlier and knew that

2

Banks lived and worked in the Howard community. Deputy Clary had no prior law-related encounters with Banks, had no knowledge of Banks's criminal history, and had no suspicions that Banks was involved in drug activity.

Deputy Clary asked Banks for his insurance, license, and registration. He then asked Banks to step out of the vehicle. Banks was compliant at all times. As Banks exited the vehicle, Deputy Clary observed Banks wearing a winter down coat and pajama pants. Deputy Clary did not notice any type of bulge coming from Banks's clothing.

Once Banks was out of the vehicle, Deputy Clary immediately performed a pat-down search for weapons.[1] In performing the search, he felt what he believed to be and what was a handgun, namely an unloaded .38 caliber revolver. Deputy Clary eventually arrested Banks for possession of a concealed weapon, a stop sign violation, and for side-swiping a parked vehicle.[2]

Banks's possession of the firearm is the basis for the current charge against him.

---

[1] Deputy Clary's reason for performing the pat-down search was two-fold. First, he was going to place Banks in his patrol car. Second, he thought it was "weird" that Banks had his hands in the air when he first approached the car. At no point in time did Deputy Clary radio for backup because he did not feel it was necessary.

[2] Deputy Clary was unaware of the side-swipe incident when he performed the pat-down search.

## DISCUSSION

Banks objects to the magistrate judge's finding that Deputy Clary had a reasonable belief that his safety or the safety of others was in danger, thereby making his pat-down search valid under the Fourth Amendment.[3]

"The Fourth Amendment forbids unreasonable searches and seizures and usually requires police to obtain a warrant before conducting a search." *United States v. Preston*, 685 F.3d 685, 689 (8th Cir. 2012). An exception to the warrant requirement permits a limited, pat-down search for a weapon "if there is a reasonable suspicion that the suspect is armed and poses a danger to officers or others." *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 29 (1968)). "Officers may conduct a protective pat-down search for weapons during a valid stop when they have objectively reasonable suspicion that a person with whom they are dealing 'might be armed and presently dangerous and criminal activity might be afoot.'" *Id.* (citing *United States v. Robinson*, 664 F.3d 701, 704 (8th Cir. 2011)). In other words, a "pat-down search is permissible if a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Preston*, 685 F.3d at 689. The totality of the circumstances must be considered in determining whether reasonable suspicion existed. *United States v. Davis*, 457 F.3d 817, 822 (8th Cir. 2006).

---

[3] Banks also objects to the magistrate judge's factual finding that "[t]he snow had not been cleaned off Banks' vehicle or windshield." Docket 37 at 4. Whether snow had been cleaned off Banks's windshield has no bearing on this court's analysis.

The magistrate judge found reasonable suspicion existed because: (1) Banks's hands were in the air when Deputy Clary approached the vehicle; (2) the incident occurred around 1 a.m.; (3) Banks was driving carelessly with an unidentified child in the vehicle; (4) Banks was wearing pajama pants and a bulky coat; (5) Deputy Clary was alone on patrol; and (6) the inherent danger presented by traffic stops. Docket 27 at 5. Other facts that the magistrate judge considered in his analysis, but apparently found unpersuasive, were that Howard, South Dakota, is not a high crime area and that Deputy Clary had no reason to suspect that Banks had a history of violence or was associated with drug activity. Based on a totality of the circumstances, the magistrate judge concluded that the warrantless pat-down search was reasonable and therefore valid under the Fourth Amendment.

To be a valid search under the Fourth Amendment, the circumstances in which Deputy Clary found himself must have created an objectively reasonable suspicion that Banks might be armed and dangerous or that criminal activity might be afoot. *Preston*, 685 F.3d at 689. The facts that existed, however, do not have a specific link to or even an aura of dangerousness or criminal activity. *See id.* at 689 (noting pat-downs are appropriate only when the officer has an objectively reasonable suspicion that the suspect is "armed and presently dangerous and criminal activity might be afoot"). The facts specific to Banks are his hands were raised in the air when Deputy Clary approached, he was driving carelessly with a child in the vehicle, and his clothing was

unusual. None of these facts suggests Banks was armed and presently dangerous.

First, the magistrate judge and the government rely heavily on the fact that Banks had his hands in the air when Deputy Clary approached the vehicle. The magistrate judge cites *United States v. Greene*, 129 F.3d 1252 (1st Cir. 1997) (unpublished), to support the notion that Banks's conduct of having his hands in the air "could reasonably be construed by a seasoned police officer as evincing consciousness of guilt." Docket 27 at 5. The facts in *Greene* are materially different than the facts here, however. In *Greene*, the defendant, Omar Greene, was a passenger riding in the backseat of a cab that had been pulled over for speeding. As the officer approached the cab, Greene appeared nervous and asked, "What did I do?" *Greene*, 129 F.3d at *2. The First Circuit Court of Appeals found that Greene's nervousness and question could reasonably evince a consciousness of guilt. *Id.* The First Circuit further found that such facts, when coupled with (1) the officer noticing a bulge in the pocket of Greene's pants, and (2) the widespread presence of guns on the streets of Boston, justified a pat-down search. *Id.* The implication from *Greene* is: evincing consciousness of guilt creates suspicion and is a factor that weighs in favor of conducting a pat-down search.

Banks's conduct here—putting his hands in the air—may suggest a consciousness of guilt, but it does not generate the same level or type of suspicion as existed in *Greene*. Greene was merely a passenger in a cab that

was pulled over for speeding. He had no reason to "evince" a consciousness of guilt and, thus, by doing so appeared suspicious. Here, Banks was the driver of a vehicle that failed to stop at a stop sign and also spun out. When the vehicle came to rest, Banks was immediately confronted with a patrol car's emergency lights and, shortly thereafter, with an officer approaching his vehicle. "Evincing consciousness of guilt" would be natural under such circumstances; he had just been caught committing a traffic violation. And while placing one's hands in the air without being told to do so may be "weird,"[4] the record does not show a link between Banks's unusual conduct and any type of danger or criminal activity. *See Preston*, 685 F.3d at 689 (requiring an objectively reasonable suspicion that the suspect is dangerous and criminal activity might be afoot). Therefore, *Greene* is inapposite when the facts are compared.[5]

Second, Banks's careless driving with a child in his vehicle does not, without additional facts, create a suspicion of dangerousness or criminal activity. The careless driving—sliding through a stop sign and spinning out—is

---

[4] Acting "weird" does not necessarily suggest dangerousness or criminal activity exists. To make a search reasonable, the "weird" conduct must imply some type of danger exists or criminal activity is afoot, or at least allow for such an inference. The unusual nature of the behavior must have some link to danger or crime.

[5] Additional facts distinguish *Greene*. The officer in *Greene* noticed a bulge in Greene's pocket, and the events took place in Boston, where there is a "widespread presence of guns on the streets[.]" 129 F.3d at *2. Here, Deputy Clary did not notice any bulge, and Howard, South Dakota, is not a high crime area.

not particularly unusual when taking into account the road conditions found in the winter months in South Dakota. Moreover, having a child in a vehicle, without more, is not so atypical as to warrant the necessary suspicion. Deputy Clary was not searching for a missing child, and there was no evidence that the child was acting in such a manner as to raise suspicion.

And third, Banks's clothing could not have reasonably caused suspicion. Wearing a winter down coat is the norm in South Dakota during the winter months. Indeed, the only unusual thing about Banks's clothing at the time of the search was the fact that he was wearing pajama pants, and, quite frankly, nothing about pajama pants insinuates danger or criminal activity.

The court needs to consider the totality of the circumstances in determining whether reasonable suspicion existed. *Davis*, 457 F.3d at 822. While the standard facts cited by courts in upholding pat-down searches exist here—the search occurred at night, the officer was alone, and it was a traffic stop, *see, e.g., United States v. Roggeman*, 279 F.3d 573, 578 (8th Cir. 2002) (noting that "the fact that suspect was detained late at night by a lone officer in a poorly lit area adds to the reasonableness of an officer's conclusion that the person he has detained should be frisked for weapons")[6]—there are additional

---

[6] In *Roggeman*, the Eighth Circuit noted that the fact of a late-night traffic stop performed by a lone officer "adds to the reasonableness of an officer's conclusion that the person he has detained should be frisked for weapons." 279 F.3d at 578. While such a situation may "add" to the reasonableness, the court is unaware of any Eighth Circuit case which found that such factors standing alone are enough to justify a pat-down search.

facts that detract from the reasonableness of the decision to perform the pat-down search. Howard, South Dakota, is not a high crime area.[7] Also, Deputy Clary knew that Banks lived and worked in Howard and had no reason to believe Banks would be violent or that he had a history with drug activity.[8] Deputy Clary did not notice a bulge coming from Banks's clothing,[9] and Banks was the only individual who could have posed a threat.[10] Moreover, Banks complied with all requests and did not make any furtive movements as if he was trying to hide something.[11] And lastly, Deputy Clary did not radio for backup because he did not feel it was necessary.[12] All of these facts detract

---

[7] *Cf. Greene*, 129 F.3d at *2 (noting the widespread presence of guns on the streets in Boston added to the officer's reasonableness).

[8] *Cf. Preston*, 685 F.3d at 690 (noting the suspect's criminal record, which included domestic violence and guns); *United States v. Gilliam*, 520 F.3d 844 (8th Cir. 2008) (officers reasonably suspected the suspect was the subject of an arrest warrant for trafficking a controlled substance); *United States v. Menard*, 95 F.3d 9 (8th Cir. 1996) (suspected drug trafficking).

[9] *Cf. Roggeman*, 279 F.3d at 579-84 (placing significant weight on the fact that the officer noticed a bulge).

[10] *Cf. Preston*, 685 F.3d at 690 ("Finally, we recognize that allowing the occupants of the vehicle to walk away unsearched would have posed a further threat to officer safety."); *Menard*, 95 F.3d at 11 (noting that "an armed associate" might use force to free a suspect).

[11] *Cf. Gilliam*, 520 F.3d at 848 (avoiding contact with police and ignoring commands gives rise to a reasonable concern for safety).

[12] Although the officer's subjective belief is not at issue, it is not irrelevant for the court "to inquire whether at the time of the pat-down [the officer] in fact suspected that [Banks] might be armed and dangerous." *Roggeman*, 279 F.3d at 581 n.5.

from the reasonableness of Deputy Clary's decision to perform the pat-down search.

After considering the totality of the circumstances, the court finds that a reasonably prudent man placed in the circumstances Deputy Clary found himself would not have been warranted in believing that his safety or the safety of others was in danger or that criminal activity was afoot. Therefore, Deputy Clary's warrantless pat-down search was unreasonable under the Fourth Amendment. Because the pat-down search was unreasonable, the exclusionary rule requires suppression of the firearm as well as the subsequent statements made by Banks regarding the firearm. *See United States v. Villa-Gonzalez*, 623 F.3d 526, 534 (8th Cir. 2010) ("The exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search or seizure but also evidence later discovered and found to be derivative of an illegality or fruit of the poisonous tree.") (internal quotations omitted). Accordingly, it is

ORDERED that the report and recommendation of the magistrate judge (Docket 27) is rejected, and defendant's motion to suppress (Docket 22) is granted.

Dated January 24, 2014.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE